Good morning, panel. My name is Paula Gibson. I'm the appellant. One of the appellants, the co-appellant, Annette Good Parker, is also present. She will not be arguing today. I will be taking up our whole time and I intend on saving some time for rebuttal, please. May it please the Court. The rights to associate and petition for redress are protected by the First Amendment from infringement and are among the fundamental personal rights and liberty which are protected by the 14th Amendment from invasion by state action. Paragraph 9 of the Attorney General's incompatible activities policy is an affront to these constitutional protections. Is there a constitutional right to appear in court as an attorney for somebody else? Your Honor, there is a constitutional right to associate and there are cases that basically say when you're indicating that it's like, you know, a private attorney maybe just representing a random client, that in fact there may not be any right to do so. But in this particular case, this was not a random client. This was a person that was a member of my personal household. And as a result, we chose to associate and appear in this particular case. Well, you can associate all you want and you can talk all you want, but I'm having trouble figuring out what in the First Amendment gives someone the right to stand up in court on behalf of somebody else, a member of the household or not. Well I mean, does the First Amendment speak to that at all? It speaks to the right to petition for redress of grievances. And I think, Your Honor, that in this particular case, that because of the connection of the personal connection that was involved in this particular matter, that I think that in fact it does fall within the First Amendment right. If you weren't an attorney and you came into court and said, I want to speak for my friend who's living in my household with me, would the court be required to hear you out and treat you like an attorney based on something in the First Amendment? No, they would not, Your Honor. Then where's the First Amendment right here? The reason that I believe that in the case that you just proposed, that they would not be required to allow me to speak is because there's a requirement that you're deeming to be practicing law when you appear in court on behalf of somebody else. I don't think that trumps the First Amendment. I mean, I don't think a state can limit the rights under the First Amendment to attorneys. It's not uniquely. So where's the First Amendment right here? I don't think it's established by saying you can limit people who are admitted to the bar, the only people allowed to appear in court for somebody else. That by itself suggests to me that the First Amendment just doesn't speak to this. Okay. But, Your Honor, the case is actually much broader than what you're indicating. There's one part of the case that deals with me representing Annette in private litigation. There's another part of the case that deals with me representing myself in private litigation, which is not deemed to be the practice of law, yet it falls subject to this particular policy. Now, is that the case before us or the case that's going on outside this courtroom? It's alleged in the matter that is before the court, Your Honor. One of the contentions, there's three counts that deal with the issue of the representation. The first count deals with me representing Annette. The other two counts deal with me representing myself. And in this particular case, the policy impacts and prohibits me from being able to represent myself in a legal matter without their permission. Counsel, and yourself, I guess, Ms. Gibson, you're not really acting as counsel. What effect does the Garcetti case have on our analysis of the First Amendment claim? In other words, the Supreme Court, I think, has limited significantly the definition of what it means to speak as a public employee on a matter of public importance. Right. I think that in the particular case of the Garcetti matter, Your Honor, the court found that Garcelli, in the situation in which Garcetti was speaking, he was actually speaking as a representative of the district attorney's office in that particular case, and basically the court found that when he speaks as a representative of the district attorney's office, he does not have any First Amendment rights that are impacted by them controlling that speech. This case presents actually the opposite of that, and that is, what are the rights of the state to control the right of me as a state employee to speak on a personal level as a citizen in this matter? And in this particular case, the policy that is at issue basically is a before-the-fact prohibition on activities that are protected by the First Amendment. It's not tailored to address any of the harms that the government claims to want to protect in this matter, and it also vests with them unbridled discretion as to whether or not to permit or deny expressive activity. The policy does not consider whether a state employee speaks as a citizen upon matters which are not job-related or connected in any way to their employment. The policy does not consider whether a state employee speaks upon a matter of public concern. Either way, paragraph nine allows a government official to deny permission to associate a petition for redress without any justification at all, and it also allows them to censor any litigation theories that you might want to advance, even if you have permission. I submit to the court that such a statute or such policy is a prior restraint, and on the facts of this particular case has actually resulted in censorship. If you look at the joint appendix on page 166, they basically put down specific limitations. Even though they gave me permission to represent myself in court, the first item in the list is basically limitations on the arguments that I'm making in this particular case. The United States Supreme Court has indicated that the mere existence of a licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power never actually abuse. Standards limiting the licensor's discretion, which are missing in this particular case, would provide a guidepost in order to allow the court to decide whether or not the exercise of this discretion is being dealt in a way that it's resulting in a violation of the First Amendment. Therefore ‑‑ Ms. Gibson, I just want to point out, you have about three minutes left, and if you want to save time for rebuttal, you may do that. Yeah. I just want to make two more points, if I may, Your Honor. Sure. I think that even if the state could lawfully require permission to be sought in order to petition for redress in this particular circumstance, the policy that's at issue in this particular case is still unconstitutional, because there's no guidelines that set forth the standard by which the matters will be addressed or the procedures by which you obtain the permission. And the lack of those guidelines along, basically, in my opinion, rendered this particular policy to be unconstitutional. The other one thing I want to say just real quickly, and that is on the attorney's fees issue, Your Honor, I would submit that our claims were never frivolous at all as alleged in the brief, and moreover, in regards to the breach of contract allegation, until we filed this action for the first time after filing the action, we became aware that the state was taking the position that we did not have a contract in this particular matter. Moreover, the district court's decision made a determination that even if we did have a contract, we did not suffer damages, but in regards to that, they took away the jury's right to make that determination as to what the damages would be, and without ever hearing any evidence in the case, that was a wrongful decision. Thank you. Thank you very much. We will now hear from Ms. Quinn. Good morning, Your Honors. My name is Stephanie Quinn. I represent the Office of the Attorney General and the individual appellees here. Your Honor, the malpractice case that the appellants were involved in this case is the perfect example of why this policy is in place. Any public agency that employs attorneys, and even private law firms, have to have an ability to place reasonable restrictions on the ability of their attorneys to engage in private law practice. And that's exactly what we're talking about here, and I think the Court's questions to Ms. Gibson about that is really the key here, is an attorney, a state attorney, does not have a capacity to do that. So the policy at issue here really affects First Amendment rights in a very minimal amount. What is your response to the argument that the analysis is different when it comes to representing oneself, because anyone can appear pro se, lawyer or not, so how does the policy affect someone who's a lawyer who wants to represent herself in an action? Yes, Your Honor, the policy applies in those situations. And legitimately, and the courts have in other cases have stated this, that even if there is a First Amendment protection there, if there's a First Amendment right, the state still has an opportunity and a need to place reasonable restrictions. And that's why there's... What's your best case for that proposition? The Williams v. IRS case is almost totally analogous to this case. That case was an almost identical policy, preapproval requirement for IRS attorneys to engage in outside practice. And in that case, the attorney, the IRS attorney, filed an action on behalf of himself and his wife and a couple other people that dealt with an issue outside the employment context. And the court, it was a D.C. Circuit case, the court in that particular instance, first thing that they identified is, this attorney does not have a constitutional right to act as an attorney for someone else. And beyond that, even if he did, there are legitimate reasons why the state or there the IRS has to place reasonable restrictions on the conduct. Just like any law firm, a public agency employing attorneys, which the Attorney General's Office is one of the most largest law firms in the state of California, you have to be able to control the potential for conflicts. When you have attorneys appearing in court doing exactly what they do in their day job, there's the potential to prejudice the department. And that's exactly what happened in this situation with Ms. Gibson. What is your response to the argument that there are no either substantive or procedural guidelines? For example, you've just said that there are no substantive guidelines, but that appears in your arguments and not in the regulation itself. So what is, is this regulation good enough with respect to representing oneself? Yes, Your Honor. The policy speaks to the issues that are at issue here. The policy states that a Deputy Attorney General like Ms. Gibson cannot engage, has to get pre-approval to engage in litigation on behalf of Ms. Gibson. And that's what the policy says. But what are the standards for pre-approval? Well, the standards are whether the activities, the outside employment is in conflict with the duties of that deputy. And that's going to be based on the general understanding. The policy provides fair warning to what's restricted by the policy. And it talks to conflicts of interest. And that's really what's at issue here is, is there a conflict with a DAG like Ms. Gibson appearing in court and proposing positions for a private client that may be out of office? And that's really what's at issue here. And Ms. Gibson is not going to be adverse to her state client. In this particular situation, Ms. Gibson appeared in court in this malpractice case. Her identity as a Deputy Attorney General became an issue in the case. And it actually caused the State of California to be sued by the malpractice defendant. So that's the exact situation that this policy speaks to. Is there going to be a conflict with the duties of that deputy? And that's what this policy, why this policy is in effect. And I want to speak to an issue of the public concern test. The court only reached that threshold public concern test. And I think it's important to note that it's really, that's really an important issue here. This court has noted in a recent case in Dibble v. City of Chandler that there's some uncertainty whether or not that threshold test applies when you're dealing with speech that's outside the employment context and not about the job. And I want to speak to that issue of the public concern test. And I want to speak to that issue of the public concern test. And in the City of Chandler case and also in the Supreme Court's case of Roe v. City of San Diego. Let me ask you a question. The policy, if I'm looking at ER 104, says that the lawyer may handle personal and family legal matters in which there is no conflict with his or her duties as an employee of the state after first obtaining approval. The argument you've made seems to suggest that there really aren't any personal or family legal matters in which there is no conflict with his or her duties as an employee of the state after first obtaining approval. There's no personal or family legal matters that wouldn't conflict just because they're appearing in court. So that seems a lot broader than the actual document that was signed. How do you reconcile those two things? Right, Your Honor. No, I agree that there's going to be certain litigation that the department's going to allow deputies to engage in. For example, they allowed Ms. Gibson to appeal the sanctioned orders against her in the underlying malpractice case. And there's certain circumstances where there's not going to be a potential conflict of interest. The point I was making... It can't just be that she's appearing in court, because that would undo the entire requirement that there be some conflict. It would just be... Right. I agree. I agree. That's not the issue. The issue is she's doing, she's using, identifying herself in court as a deputy attorney general, which could conflict with her duties. She's identifying herself. This litigation actually resulted in the state being sued. So the distinction is that it's not like she's engaging in conduct that's totally separate from her day job. I mean, when an attorney appears in court, it's not totally separate. But it doesn't mean that in every circumstance she's going to be, there's going to be a conflict. This policy is in place and the preapproval requirement is in place to prevent those conflicts from occurring before they happen. And that's why the department should be able to assess, based on the type of litigation that the person is engaging in, whether or not it's going to be something that's going to create a conflict of interest. If Ms. Gibson goes into court and sues one of her state clients, that obviously could create a conflict. So the department needs to be able to assess that prior to her doing so. And that's a different situation if she had a personal injury case that she litigated as a pro per for a car accident. That's a different situation. So that's why the preapproval requirement is in place, is because it's the department that needs to make these determinations based on the particular facts at the time. And that's exactly what they weren't able to do in this circumstance, because Ms. Gibson was litigating this case without getting permission, and ultimately the state was sued. So that's why this policy is in effect. And the district court made the right decision by looking at this case as not meeting that threshold public concern test, because this is really not a situation where you can say that the outside conduct is totally removed from the workplace. When what you do outside the workplace affects what you do inside the workplace, for example, the police officers both in Dibble and in Rowe, the court looked at the fact that even though this appears to be totally outside the workplace, in that case it was pornographic conduct outside the workplace, because they had identified themselves or were identified as police officers, that affected the department in many ways, and that is what justified applying that threshold public concern test. And just briefly in the amount of time that I have, the court... It doesn't have a feeling that it's totally frivolous, such that attorney's fee should be awarded. Well, in this particular circumstance, Your Honor, the district court decided, first of all, one of the claims that the appellants brought that was frivolous is that they sued the state of California and individuals in their official capacity, which is established in the law that you can't do that. And they refused to dismiss those claims, and that required the attorney general's office to file a motion to dismiss those claims. And second of all, the district court in this case found that the idea of litigating a private malpractice suit while you're employed by the state is clearly not a matter of public concern. It's a personal grievance between Ms. Good Parker and her divorce attorney, and that's where the district court based that frivolous ruling. Well, we'd have to look at that and see whether that makes sense, but there's no case in the Ninth Circuit similar to Williams, is there? So there's basically no law in this circuit on the extent, if any, of a public employee's First Amendment right in this circumstance. Your Honor, it looks like I'm almost out of time, but I will work. No, you are out of time, but I'd like you to answer the question that's about to come, which is, since this is a matter of first impression in this circuit, and the D.C. Circuit treated it as a quite serious issue and not a frivolous issue at all, that one warranty would be required. Why should we treat this as a frivolous claim? Well, Your Honor, there's a lot of authority in the Ninth Circuit of what qualifies as public concern, and in Roe, which is a case that went up to the Supreme Court from the Ninth Circuit, the Supreme Court stated that public concern means a matter of legitimate news interest. Now, is a private malpractice case, is the public concerned about something like that? No. There's plenty of authority in this circuit, and you look at Dibble, look at Roe, there's certain conduct that the public is not interested in. If Ms. Gibson was speaking out about her public employment or something the department did wrong, I mean, that's a different story. What we're dealing with here is the issue of, is a private malpractice suit, and then the other litigation that stems from that, is that of legitimate news interest? And I would submit to the court that it's not, and that's why the district court made its ruling. Thank you. Thank you. I think it's significant that she's referred to the Williams v. Attorney Reveno's case as the case by which their policy should be judged. And the reason why I find that to be significant is for two reasons, Your Honor. The Internal Revenue Service had a specific guideline and policy handbook that basically set forth four criterias upon which a determination would be made as to whether or not approval for outside activities would be given. The policy provided that if those four standards were met, that the approval would automatically be given. Further, in that particular case, the policy at hand did not apply to an Internal Revenue Service attorney that was represented by the district court. And although this one incident, part of it, is broader than that, the two other counts relate to exactly my right as a citizen to petition for redress and to represent myself in connection with those petitions. If they're right, I basically have no First Amendment right whatsoever to even represent myself without obtaining their permission and being potentially subject to censorship or whatever. I want to point out in terms of what they said about being sued by the attorney Greenberg, I did not, and I think the record would reflect this, and particularly if we were allowed to put evidence on to this issue, I never went to court and made the representation that I was a deputy attorney general. The attorney knew that, and they brought it up to the court and made the claim that I attempted to use my authority to get a criminal case brought against him. I was able to demonstrate for the superior court that, in fact, that contention was utterly false. And ultimately, when the superior court heard a motion to disqualify me on the basis of conflict, they denied that motion, and they basically found that there was, in fact, no conflict here. In terms of what they're saying that their justifications are, if they're indicating that there's a problem with an attorney appearing in court on a personal matter and then also appearing in the same court as a deputy attorney general, that is not really a legitimate reason to control that situation, Your Honors, and the reason being is that the problem exists whether or not you have permission or not. And if that is a concern, I would submit to the court that it becomes more of a problem if you, in fact, have permission from them to do it than it is when you don't have permission, and, therefore, that is not even a legitimate justification to present. Any more questions, Your Honor? I don't believe so. Thank you. May I ask what's going to happen in terms of the stay that's going to be held? We'll make a decision on that as on the rest of the case, and everyone will know in writing when we've made a decision. There's no assumptions. I'm just telling you that the next thing you'll hear from us will be in writing. Okay. Thank you, Your Honor. Thank you. The case just argued is submitted, and we thank you both very much for your arguments. Our final case on this morning's calendar is Baker v. Garden Grove Medical. Thank you.
judges: Graber, Clifton, Shea